IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANNIE BOONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:17CV113 |
| | ) | |
| BOARD OF GOVERNORS OF THE | ) | |
| UNIVERSITY OF NORTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Annie Boone, initiated this action against Defendant, the Board of Governors of the University of North Carolina ("UNC"), alleging four claims: (1) failure to accommodate under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; (2) failure to accommodate under the Rehabilitation Act, 29 U.S.C. § 794 et seq.; (3) retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; and, as an alternative to her first and second claims, (4) interference under the FMLA, 29 U.S.C. § 2601 et seq. (ECF No. 1.) Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint. (ECF No. 11.) For the reasons set forth below, Defendant's motion will be granted in part and denied in part.

**I.  BACKGROUND**

According to Plaintiff's Complaint, she was employed by UNC, on or around April 23, 2012, as a campus police officer. (ECF No. 1 ¶ 9.) On or around Memorial Day in 2015,

Plaintiff was raped by a "supposed 'friend'" whom she was visiting in South Carolina. (*Id.* ¶¶ 13–14.) Plaintiff "did not report the rape to authorities, and she did not inform anyone at UNC that she had been raped." (*Id.* ¶ 15.) As a result of the rape, Plaintiff alleges that she has been "diagnosed with a post-traumatic stress response, anxiety, and depression." (*Id.* ¶ 16.) According to Plaintiff, these conditions "significantly impair" her ability to work, sleep, and think, among other things. (*Id.*)

"On or around August 21, 2015, [Plaintiff] told a co-worker . . . something to the effect that her head was not 'in the game.'" (*Id.* ¶ 18.) This information was allegedly reported "up the chain of command," and on August 22, 2015, Plaintiff was called into a meeting with her superiors. (*Id.* ¶ 19, 20.) During the meeting, Plaintiff was told by her superiors "that they were aware she was having problems, and suggested that she take FMLA leave." (*Id.* ¶ 20.)

One week later, on August 28, 2015, Plaintiff was notified by UNC "that she was being placed on investigatory status regarding her attendance at a training symposium 11 days prior," and that "she would have to undergo a Fitness for Duty examination" to determine her ability to return to work as a police officer. (*Id.* ¶ 22.) Plaintiff submitted to the "mandatory Fitness for Duty examination . . . with The FMRT Group, a company that provides psychological evaluations for law enforcement agencies." (*Id.* ¶ 23.)

On or around September 30, 2015, Plaintiff was informed by UNC's human resources department "that she was no longer under investigation and could submit her FMLA paperwork." (*Id.* ¶ 25.) Plaintiff "submitted her FMLA paperwork to UNC on or around

2

October 26, 2015." (*Id.* ¶ 26.) On November 6, 2015, UNC approved Plaintiff's request for FMLA leave from September 28, 2015 through December 18, 2015.[1] (*Id.* ¶ 27.)

One day before the expiration of Plaintiff's FMLA leave period, "[o]n or around December 17, 2015," Plaintiff "called her chief regarding her return to work [and h]e told her that she could return after the new year." (*Id.* ¶ 28.) After the new year, on January 4, 2016, she told UNC "that she was cleared by her doctor to return to work and provided a doctor's note certifying her fitness for duty." (*Id.* ¶ 29.) Plaintiff alleges that "UNC did not accept" the fitness-for-duty letter from her doctor, "instead returning [Plaintiff] to [t]he FMRT Group" for evaluation on or around January 8, 2016. (*Id.* ¶ 31.) The FMRT Group then notified UNC that Plaintiff "was unfit to return to work," and on or around January 22, 2016, UNC informed Plaintiff "that she was unable to return from FMLA leave." (*Id.* ¶ 32.)

Plaintiff alleges that she then asked UNC for "leave or light duty as a reasonable accommodation." (*Id.* ¶ 33.) Plaintiff further alleges that she "submitted paperwork to UNC certifying that she had a disability related to mental health brought on by a personal trauma." (*Id.*) According to the Complaint, UNC nonetheless "demanded that [Plaintiff] provide documents from her doctor . . . stating that [she] was disabled and required accommodation." (*Id.* ¶ 36.) Plaintiff alleges that her doctor "claimed that [she] was fit to return to work and therefore would not certify that she was disabled." (*Id.* ¶ 38.) Plaintiff claims that UNC

---

[1] Although Plaintiff's Complaint indicates that a copy of UNC's FMLA approval letter to Plaintiff, with attachments, is included as Exhibit 1 to the Complaint, these documents have not been provided to the Court.

3

refused to "use the FMR[T] interview conclusions as the requisite medical certification that she was disabled," (*id.* ¶ 37), and she was subsequently terminated by UNC, (*id.* ¶ 39).[2]

Plaintiff filed the instant lawsuit seeking compensatory and punitive damages. (*Id.* ¶¶ 64–65.) Defendant has moved to dismiss Plaintiff's request for punitive damages, as well as each of Plaintiff's claims for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 11.)

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual

---

[2] Plaintiff does not provide a termination date in her Complaint.

4

enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

**III.    DISCUSSION**

    **A.    <u>Claim 1 - Failure to Accommodate under Title II of the ADA ("Title II")</u>**

UNC argues that Plaintiff's ADA claim fails as a matter of law and "should be dismissed because Plaintiff is unable to bring a claim of [public] employment discrimination under Title II." (ECF No. 12 at 6.) The Court agrees.

Under Title II, it is unlawful to discriminate against a "qualified individual with a disability" in "the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Prior to the Fourth Circuit's decision in *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407 (4th Cir. 2015), courts were divided as to whether Title II of the ADA applied to public employment discrimination claims. *See id.* at 419–20 (noting circuit split). In *Reyazuddin*, however, the Fourth Circuit joined "the majority of circuits to have considered the question" and held that "Title II unambiguously does not provide a vehicle for public employment discrimination claims." *Id.* at 421.

Here, Plaintiff makes the seemingly disingenuous argument that in *Reyazuddin*, the Fourth Circuit "blatantly ignore[d]" language from its prior decision—*Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261 (4th Cir. 1995)—setting forth the elements of a claim under Title II. (ECF No. 13 at 7–8 (citing *Doe*, 50 F.3d at 1265).) In *Reyazuddin*, however, the Fourth Circuit specifically addressed *Doe*,[3] explaining that because the appellant in *Doe* "advanced his claim

---

[3] The Fourth Circuit also cited its prior decision in *Rogers v. Dep't of Health & Envtl. Control*, 174 F.3d 431 (4th Cir. 1999) as one where the court "implicitly assumed, but did not decide, that Title II covered employee benefits." *Reyazuddin*, 789 F.3d at 421.

5

against his state employer under both Section 504 of the Rehabilitation Act and Title II of the ADA[,] . . . [the Court] had no occasion to decide whether the appellant could have [sued under] Title II alone." *Reyazuddin*, 789 F.3d at 421.

Moreover, despite Plaintiff's misguided characterization of binding Fourth Circuit precedent as "deeply flawed" and "useless," (ECF No. 13 at 7, 9), as a district court within the Fourth Circuit, this Court is obligated to follow Fourth Circuit precedent. *See Carcaño v. McCrory*, 203 F. Supp. 3d 615, 637 (M.D.N.C. 2016) (stating "district courts are . . . bound to follow circuit precedent"). Accordingly, because the Fourth Circuit has explicitly held that Title II does not apply to public employment discrimination claims, *see Reyazuddin*, 789 F.3d at 421, the Court finds that Plaintiff has failed to state a claim under Title II, and UNC is entitled to dismissal of this claim.[4]

### B. Claim 2 - Failure to Accommodate under the Rehabilitation Act

Section 504 of the Rehabilitation Act makes it unlawful for a federal agency to discriminate against a "qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). Section 504 "also requires an employer to accommodate an employee with a disability who can perform the essential functions of a job with a reasonable accommodation. But an employer avoids liability if it can show that providing an accommodation would constitute an 'undue hardship.'" *Reyazuddin*, 789 F.3d at 409.

---

[4] UNC also argues that "[e]ven if considered an ADA Title I claim, Plaintiff's claim fails because she has not exhausted her administrative remedies." (ECF No. 12 at 7–8.) Nowhere in Plaintiff's Complaint does she allege an ADA claim under Title I and further, in her response brief, Plaintiff concedes that a Title I claim "was not available to [her]." (ECF No. 13 at 7 n.2.) Accordingly, because Plaintiff does not advance a failure-to-accommodate claim under Title I of the ADA, the Court will not address such a claim.

Courts evaluate employment discrimination claims brought under Section 504 of the Rehabilitation Act "using the same standards as those 'applied under [T]itle I of the [ADA].'" *Id.* at 413 (first alteration in original) (quoting 29 U.S.C. § 794(d)). Thus, to state a prima facie case of failure to accommodate under the Rehabilitation Act, Plaintiff must allege: "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (second and fifth alterations in original) (internal quotation marks omitted); *see Lewis v. Gibson*, 621 F. App'x 163, 164 (4th Cir. 2015) (listing elements of a failure-to-accommodate claim brought under the Rehabilitation Act). Plaintiff's failure to establish any element of the prima facie case is fatal to her failure-to-accommodate claim. *See Allen v. City of Raleigh*, 140 F. Supp. 3d 470, 483 (E.D.N.C. 2015) ("A plaintiff's failure to prove any element of his prima facie case defeats his ADA failure-to-accommodate claim.").

Defendant argues that, while "Plaintiff's Complaint includes conclusory allegations listing the elements of [this] cause of action," it "includes no facts to support them," and further, that Plaintiff's claims are contradictory. (ECF No. 12 at 9.) The Court disagrees.

With respect to the first element, the term "disability," as defined in the statute, includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Plaintiff alleges in her Complaint that as a result of having been the victim of rape sometime on or around Memorial Day 2015, she was "diagnosed with a post-traumatic stress response, anxiety, and depression" which "significantly impair[ed]" her ability

7

to participate "in the major life activities of . . . working, sleeping, and thinking," among other things. (ECF No. 1 ¶ 16.) Plaintiff further alleges that she "submitted paperwork to UNC certifying that she had a disability related to mental health brought on by a personal trauma." (*Id.* ¶ 33.) At this preliminary stage in the litigation, these allegations are sufficient to satisfy the first element of Plaintiff's failure-to-accommodate claim. *See Twombly*, 550 U.S. at 570 (explaining that to survive a motion to dismiss, a plaintiff need not engage in a "heightened fact pleading of specifics"; rather, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face").

Likewise, with respect to the second element, Plaintiff sufficiently alleges that UNC had notice of her disability. As previously stated, Plaintiff alleges that she "submitted paperwork to UNC certifying that she had a disability related to mental health brought on by a personal trauma." (ECF No. 1 ¶ 33.) Further, Plaintiff alleges that FMRT "informed UNC that [Plaintiff] was unfit to return to work, presumably because of her mental health status." (*Id.* ¶ 32.) At this juncture, having drawn all reasonable inferences in Plaintiff's favor, these factual allegations are sufficient to show that UNC had notice of Plaintiff's alleged disability.

As to the third and fourth elements, Plaintiff has set forth plausible allegations to survive a motion to dismiss. Specifically, Plaintiff alleges the following: (i) that she "requested leave or light duty as a reasonable accommodation," (ECF No. 1 ¶ 33); (ii) that "UNC . . . had many officers who could cover Plaintiff's duties and who had been doing so without significant additional burden for months," (*id.* ¶ 34); (iii) that "UNC did not engage in any sort of interactive process with [Plaintiff] to determine . . . whether the accommodations she requested were feasible and capable of suiting her needs," (*id.* ¶ 35); (iv) that "[t]he requested

8

accommodations were feasible and plausible," (*id.* ¶ 45); (v) that "[t]he requested accommodations would have been effective in meeting [Plaintiff's] needs," (*id.* ¶ 46); (vi) that "[t]he requested accommodations would not have caused undue hardship to UNC," (*id.* ¶ 47); (vii) that "[w]ith the requested accommodations, [Plaintiff] would have been able to perform the essential functions of her job," (*id.* ¶ 48); and (viii) that "UNC did not provide [Plaintiff] with a reasonable accommodation," (*id.* ¶ 49). Despite UNC's argument that Plaintiff's allegations lack the requisite specificity, at the pleading stage, these factual allegations permit the reasonable inference that Plaintiff requested a reasonable accommodation that would enable her to perform the essential functions of her position, and that UNC refused to make such accommodations.

In light of the above, the Court concludes that Plaintiff has plausibly alleged sufficient facts to state a claim for failure to accommodate under the Rehabilitation Act. The Court will, therefore, deny UNC's motion to dismiss this claim.

**C.      Claim 3 - Retaliation under the FMLA**

The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). "Retaliation claims brought under the FMLA are analogous to those brought under Title VII." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 429 (4th Cir. 2015). To state a prima facie case of a FMLA retaliation claim, Plaintiff must allege: (1) "that [she] engaged in protected activity"; (2) that UNC "took adverse action against [her]"; and (3) "that the adverse action was causally connected to . . . [P]laintiff's protected activity." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006)

9

(internal quotation marks omitted). UNC argues that "Plaintiff's FMLA retaliation claim fails because she has not pled facts to establish the required causal connection." (ECF No. 12 at 11.)

Plaintiff alleges that, with UNC's approval, she took FMLA leave from September 28, 2015 through December 18, 2015. (*See* ECF No. 1 ¶¶ 27, 28.) Plaintiff further alleges that when she attempted to return to work, she was terminated by UNC. (*Id.* ¶¶ 29, 39, 60.) The Fourth Circuit has held that taking FMLA leave is a protected activity and termination is an adverse employment action. *See Yashenko*, 446 F.3d at 551. Plaintiff's allegations, therefore, satisfy the first two elements of this claim.

Plaintiff may satisfy the third element of her retaliation claim by sufficiently alleging that there is close temporal proximity between the adverse employment action and the protected activity. *See Yashenko*, 446 F.3d at 551 ("While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)); *see also Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (discussing that close temporal proximity may be "strongly suggestive of retaliatory motive and thus indirect proof of causation"). Although neither the Supreme Court nor the Fourth Circuit has "adopted a bright temporal line," the Fourth Circuit has "held that a three- or four-month lapse between the protected activities and discharge was too long to establish a causal connection by temporal proximity alone." *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (internal quotation marks omitted). Rather, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment

action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted). *See, e.g.*, *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (stating that a plaintiff's evidence that she engaged in protected activity "just a month before she was terminated" "tend[ed] to show causation" (emphasis removed)); *King v. Rumsfeld*, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (holding that two and one-half months between the protected activity and an adverse employment action was sufficiently close to make a prima facie showing of causation solely based on temporal proximity).

Here, Plaintiff alleges that her FMLA leave ended on December 18, 2015. (ECF No. 1 ¶ 27.) Although Plaintiff's Complaint does not include the date on which she was terminated, she does allege that she was terminated "[u]pon her attempted return to work." (*Id.* ¶ 60.) Plaintiff also alleges that she was informed by UNC "that she was unable to return from FMLA leave on or around January 22, 2016." (*Id.* ¶ 32.) Viewing these factual allegations in the light most favorable to Plaintiff, the Court reasonably infers that Plaintiff was likely terminated approximately two months or less following the end of her FMLA leave period.[5]

UNC contends that, "to the extent Plaintiff seeks to rely on temporal proximity alone to show causation, the time period between Plaintiff's request for FMLA leave and her termination is insufficient to establish – and arguably rebuts – any causal connection for purposes of her prima facie case." (ECF No. 12 at 13.) The Court finds this argument

---

[5] In its brief, UNC states that the allegations in Plaintiff's Complaint "demonstrate that she was terminated sometime after January 22, 2016." (ECF No. 12 at 13.)

unpersuasive because the protected activity at issue here is not Plaintiff's *request* for FMLA leave—which occurred on October 26, 2015, (*see* ECF No. 1 ¶ 26)—but, rather, Plaintiff having *taken* FMLA leave—which ended on December 18, 2015, (*see id.* ¶ 27). *See Yashenko*, 446 F.3d at 551 (characterizing "taking FMLA leave" as a protected activity).

Thus, the Court finds that Plaintiff has satisfied the third element of her retaliation claim by sufficiently alleging close temporal proximity between her protected activity and the subsequent adverse employment action. *See Ainsworth v. Loudon Cty. Sch. Bd.*, 851 F. Supp. 2d 963, 977 (E.D. Va. 2012) (finding that where plaintiff was terminated four days after her FMLA leave concluded, "this connection sufficiently establishes a prima facie showing of causality" at the motion to dismiss stage); *Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 745 (D.S.C. 2010) (stating that there was evidence of close temporal proximity where the plaintiff was terminated "the day he returned from his extended leave and less than three months from when he exhausted his FMLA leave"). The Court, therefore, concludes that Plaintiff has alleged sufficient facts to plausibly state a retaliation claim under the FMLA, and UNC's motion to dismiss this claim will be denied.

### D. Claim 4 - Interference under the FMLA[6]

The FMLA provides, in pertinent part, that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. 29 U.S.C. § 2615(a)(1). To state a claim of interference with FMLA rights, Plaintiff must plausibly allege that: (1) she was an eligible employee; (2) UNC was an employer as

---

[6] Plaintiff states that she brings this claim as an alternative to Claim 1 (failure to accommodate under Title II of the ADA) and Claim 2 (failure to accommodate under § 504 of the Rehabilitation Act). (*See* ECF No. 1 at 10; ECF No. 13 at 1, 16 n.4.)

12

defined under the FMLA; (3) she was entitled to FMLA leave; (4) "she gave her employer adequate notice of her intention to take leave"; and (5) UNC denied Plaintiff FMLA benefits to which she was entitled. *See Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 617 (W.D. Va. 2014).

The parties' arguments appear to be directed towards the fifth element of the FMLA interference claim. Specifically, Plaintiff alleges that "UNC unlawfully interfered with [her] right to return to work following FMLA leave." (ECF No. 1 ¶ 63.) UNC, on the other hand, argues that "Plaintiff has not alleged facts showing element (5) of her prima facie case." (ECF No. 12 at 14.)

Under the FMLA, eligible employees are entitled to a total of twelve workweeks of leave during any twelve-month period due to "a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D). The FMLA also provides that an employee who takes FMLA leave shall be entitled, on return from such leave "to be restored by the employer to the position of employment held by the employee when the leave commenced," *id.* § 2614(a)(1)(A), or "to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment, *id.* § 2614(a)(1)(B).

Here, Plaintiff alleges that she was on FMLA leave from September 28, 2015 through December 18, 2015. (*See* ECF No. 1 ¶¶ 27, 28.) She further alleges that, "[o]n or around December 17, 2015," when she "called her chief," she was told to return to work "after the new year." (*Id.* ¶ 28.) According to the Complaint, although Plaintiff "informed UNC that she was cleared by her doctor to return to work and provided a doctor's note certifying her

13

fitness for duty," UNC "instead return[ed] her to The FMRT Group to meet with Dr. Sara Marcus" for a fitness-for-duty examination on or around January 8, 2016. (*Id.* ¶¶ 29, 31.) Plaintiff alleges that "Dr. Marcus informed UNC that [Plaintiff] was unfit to return to work, presumably because of her mental health status, and UNC subsequently informed [her] that she was unable to return from FMLA leave on or around January 22, 2016." (*Id.* ¶ 32.)

Accepting Plaintiff's allegations as true, Plaintiff has failed to satisfy the fifth element of her FMLA interference claim. First, "the FMLA provides no *absolute* right to restoration to a prior employment position." *Yashenko*, 446 F.3d at 549 (emphasis added). An employee who remains "unable to perform an essential function of the position because of a physical or mental condition," once her FMLA leave has ended is not entitled to job restoration. 29 C.F.R. § 825.216(c). In this case, Plaintiff alleges that based on the psychological evaluation conducted by The FMRT Group, she was deemed "unfit to return to work, presumably because of her mental health status." (ECF No. 1 ¶ 32.) Accordingly, UNC did not violate the FMLA when it failed to reinstate Plaintiff following the results of her mental health evaluation showing that she was unfit to return to work. *See Ainsworth*, 851 F. Supp. 2d at 975 (stating that "an employer does not violate the FMLA when it fails to reinstate an employee who is physically unable to return to work at the conclusion of the twelve-week period of FMLA leave"); *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 523 (D. Md. 2008) ("[I]nability to work at the end of the twelve-week period bars relief" under the FMLA.).

Second, Plaintiff's right to job restoration under the FMLA expired at the end of her FMLA leave period, on December 18, 2015. Thus, even though Plaintiff was granted additional leave beyond the FMLA period, her job restoration rights under the FMLA were

14

not likewise extended. *See Ainsworth*, 851 F. Supp. 2d at 976 & n.6 (dismissing plaintiff's FMLA interference claim because, among other things, plaintiff's employer was under no obligation to reinstate plaintiff even where the employer "permitted [plaintiff] to remain on leave of absence beyond her FMLA leave"); *Ackerman v. Beth Israel Cemetery Ass'n of Woodbridge*, No. 09-1097 (GEB), 2010 WL 2651299, at *7 (D.N.J. June 25, 2010) ("Employees who exceed the twelve weeks of leave the FMLA provides for stand to lose their entitlement to job restoration even if their employers provide additional, non-FMLA, leave." (internal quotation marks omitted)); *Drumheller v. Cent. Va. Elec. Coop.*, No. 3:06-CV-00010, 2006 WL 2403334, at *7 (W.D. Va. Aug. 18, 2006) ("[O]ne might say under the FMLA, '[w]hen it's over, it's over' . . . [for] once the twelve week period has expired, the time to claim entitlement to benefits under the FMLA cannot be enlarged or recaptured because no violation of the Act has occurred within the statutory benefit period."). In light of the above, Plaintiff has failed to plausibly allege that Defendant denied her FMLA benefits to which she was entitled. Accordingly, the Court concludes that Plaintiff's FMLA interference claim fails and will be dismissed.

### E. Punitive Damages

UNC moves to also dismiss Plaintiff's request for punitive damages. (*See* ECF No. 1 ¶ 64; ECF No. 12 at 17.) Pursuant to the Court's findings above, the two surviving claims in this action are the failure-to-accommodate claim under § 504 of the Rehabilitation Act and the FMLA retaliation claim. The Supreme Court has stated that punitive damages "may not be awarded in suits brought under . . . § 504 of the Rehabilitation Act." *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Further, under the FMLA, an employer who commits a violation of the statute shall be liable for liquidated damages, as well as for lost pay, lost benefits, other actual

monetary losses suffered by the aggrieved employee, and equitable relief such as employment, reinstatement, or promotion. 29 U.S.C. § 2617(a)(1). The FMLA does not, however, provide for the imposition of punitive damages. *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 772 (M.D.N.C. 2000) (concluding that punitive damages are not available under the FMLA); *Settle v. S.W. Rodgers, Co.*, 998 F. Supp. 657, 666 (E.D. Va. 1998), (same), *aff'd*, 182 F.3d 909 (4th Cir. 1999). Accordingly, Plaintiff's request for punitive damages with respect to her two surviving claims will be denied.

For the reasons stated herein, the Court enters the following:

**ORDER**

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint, (ECF No. 11), is GRANTED IN PART AND DENIED IN PART. Defendant's motion is hereby GRANTED as to Plaintiff's failure-to-accommodate claim under Title II of the ADA (Claim 1) and Plaintiff's FMLA interference claim (Claim 4). Claims 1 and 4 are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's motion is hereby DENIED as to Plaintiff's failure-to-accommodate claim under the Rehabilitation Act (Claim 2), and Plaintiff's FMLA retaliation claim (Claim 3).

IT IS FURTHER ORDERED that Defendant's motion is hereby GRANTED as to Plaintiff's request for punitive damages with respect to the two (2) surviving claims.

This, the 30th day of March, 2018.

/s/ Loretta C. Biggs
United States District Judge